MALICK, Respondent, vs. KELLOGG and another, Appellants.

*June 2—June 18, 1903.*

*Landlord and tenant: Unlawful detainer: Nonpayment of rent: Pleading: General denial: Admissions: Construction of allegations of answer: Construction of lease: Landlord's breach of covenants.*

1. In an action for unlawful detainer for nonpayment of rent, the answer contained a denial of all allegations of the complaint not therein admitted, but contained no specific admission that defendant was in possession of the premises. The making of the lease was admitted, and the defense was based on the sole ground that the plaintiff had failed to perform certain agreements or conditions which were to be performed after possession was taken, by reason of which the payment of rent was excused or rendered impossible. *Held* that, applying reasonable rules of construction, the allegations of the answer must be construed as admitting defendant's possession of the premises.

2. When a fact is admitted by clear and necessary implication from other facts expressly stated in a pleading, the admission is as effective as though it were expressly stated, and will not be overcome by a mere general denial.

3. The lease of a farm for dairy purposes provided that the lessor should provide pasture for 100 head of cattle and cleared land enough to feed the same, not less than 100 acres. The cleared land was not described. *Held*, that a construction that lessor was obliged to provide an additional 100 acres of cleared land for pasturage was untenable.

4. Where, after the tenant has taken possession, the landlord has failed to perform his agreement to make certain improvements upon the demised premises, such agreement is an independent agreement, not one upon which the right to demand rent depends, and hence is not a defense to an action for unlawful detainer for nonpayment of rent.

APPEAL from an order of the circuit court for Portage county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action of unlawful entry and detainer brought to remove tenants for failure to pay rent. The complaint alleges the leasing by written lease of a farm of several hundred acres by the plaintiff to the defendants for a term of five

years from April 22, 1901, upon a rental of $1.25 per month per head of milch cows and sixty-two and one half cents per month per head for heifers kept by the defendants upon the farm, payable at the end of each month. The complaint also alleges the default for several months·in the payment of rent and the giving of due notice in writing requiring the payment of rent or the surrender of possession. The material parts of the defendants' answer are as follows:

"They allege that they entered into a certain contract with the plaintiff, a copy of which is hereunto attached, marked 'Exhibit A,' and made a part of this answer. That it was understood, and by said contract is in fact made a condition upon which the rentals in Exhibit A mentioned should become due and payable, that the plaintiff should do and perform certain things in said contract particularly set forth, which conditions to be performed were and are conditions precedent or at least concurrent to any performance of said contract on defendants' part; and these defendants allege that the plaintiff has neglected and failed to perform the said contract on his part, and thereby rendered it impossible for these defendants to perform their part of said contract. That it was absolutely, entirely, and wholly impossible for defendants to pay any rent until the said conditions to be performed by plaintiff were performed, which conditions, as respectfully appears in Exhibit A, are that plaintiff should furnish pasture for 100·head of cows, and at least 100 acres of cleared land, a creamery, and silo, all of which he has not done, and thus has prevented the defendants performing their part of the contract. That the plaintiff is absolutely and completely in default in all of the conditions to be by him performed as specified by Exhibit A. That there is no rent due from these defendants to the said plaintiff. Except as herein admitted, these defendants deny each and every allegation in the complaint."

The contract attached to the answer is dated April 22, 1901, and by its provisions the plaintiff agrees to rent or lease to the defendants for a term of five years the plaintiff's farm in the town of Linwood, Portage county, at $1.25 per month per head of milch cows and sixty-two and one half cents per

month per head of heifers, the same being in lieu of any other charges for rent. The contract then provides for the payment of $875 by the defendants to the plaintiff for thirty-three head of cattle and $625 for horses and tools upon the farm, and also that the defendants are to convey to the plaintiff a certain described farm in Lincoln county for $2,500, the sum of $1,500 thereof to be applied upon said purchase of stock and tools, and the balance paid in cash or its equivalent. The contract then proceeds as follows:

"The total rental of said farm of the party of the first part is to be one and 25-100 dollars per head of milch cows. Said party of the first part is to build a building suitable to be used for a creamery, not larger than 20x30 feet; also to provide pasture for one hundred (100) head of cattle, and cleared land enough to provide feed enough for one hundred (100) head of cattle, not less than one hundred acres. Said party of the second part is to provide himself with one hundred cows within one year from date of this instrument. This lease may be renewed for five years when each party to this agreement is to double the capacity of his part of the agreement. Said party of the second part is to have the privilege of raising calves, pigs and colts, without further charges. Said party of the first part is to build a silo sufficient to provide for ensilage for said one hundred cows, during this present summer of 1901; also to furnish stalling and flooring to the remainder of the present barn. Said party of the first part is to have the right to leave his registered stock on the farm, said party of the second part to keep and provide for them the same as for his own, and pay for the use of the cows the same as for his own, that is, one and 25-100 dollars per month each, each party to this agreement to have one half of the increase. Also the party of the second part is to have the privilege of cutting any down timber for the use of house and creamery fires as long as the down timber lasts or until this lease shall have expired."

A general demurrer to the answer was sustained, and the defendants appeal.

For the appellants the cause was submitted on the brief of *Lamoreux & Park*, attorneys, and *F. J. Smith*, of counsel.

For the respondent there was a brief by *McFarland, Hanna & Murat,* and oral argument by *C. D. McFarland.*

WINSLOW, J. While the answer contains no specific admissions that the defendants are in possession of the demised premises, and while it does contain a denial of all allegations of the complaint not therein admitted, we think that, applying reasonable rules of construction, its allegations must be construed as admitting possession of the premises. The making of the lease is admitted, and the defense is based, not on the ground that possession was not delivered, but on the sole ground that the plaintiff has failed to perform certain agreements or conditions which were to be performed after possession was taken, by reason of which it is alleged that the payment of rent has been excused or rendered impossible. The allegation that no rent is due is evidently but a legal conclusion from the previous facts stated. When a fact is admitted by clear and necessary implication from other facts expressly stated in the pleading, the admission so made is as effective as though it were expressly stated, and will not be overcome by a mere general denial. *Miller v. Larson,* 17 Wis. 624.

The fact of possession of the leased premises being admitted, the question is whether the failure of the plaintiff to perform his agreements constitutes a defense. The farm leased was several hundred acres in extent, and was evidently leased for dairying purposes. The plaintiff agreed to build a creamery, to provide pasture for 100 head of cattle, and cleared land enough to feed the same, not less than 100 acres, and to build a silo sufficient to provide ensilage for said cattle. It seems to us very plain that these agreements were all expected to be performed upon the leased premises, and after the defendants took possession. The claim that the agreement means that the plaintiff was to provide an additional hundred acres of cleared land for pasturage is untenable; we find noth-

:ing in the agreement that indicates such an intention.   It is unreasonable to suppose that it was the intention to make so large and material an increase in the leasehold estate without describing or locating the land so to be added, or indicating in any clear way that such was the purpose.   It is not a case, :therefore, of failure to put the tenant in possession of the leased premises, nor of eviction of the tenant from any part of the premises, but simply a case where the landlord has failed to perform his agreement to make certain improvements upon the premises after the tenant takes possession. It cannot be distinguished from a covenant to make repairs during the term.   Such an agreement is uniformly held an independent agreement, and not one upon which the right to demand rent depends.   *Peterson v. Kreuger,* 67 Minn. 449, 70 N. W. 567; *Phillips v. Port Townsend,* 8 Wash. 529, 36 Pac. 476; Wood, Landlord & T. (2d ed.) 1132, 1133.   Were this an action to recover the rent, and were the landlord's breach pleaded as a counterclaim, the question would be entirely different.   The demurrer was rightly sustained.

*By the Court.*—Order affirmed.